## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 08-cr-376-5 (PLF)** |
| | : | |
| **DAVID COOPER,** | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF RESENTENCING

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, hereby files its Memorandum in Aid of Resentencing. At this time the government has not yet been in contact with Gregory Lyles, the victim in this case, and is not yet prepared to make any additional representations on his behalf.[1] Accordingly, the government may seek to supplement this memorandum if necessary.

### BACKGROUND

A nine-count indictment filed on December 18, 2008, charged defendant Cooper, Gregory Lassiter, Ryan Wheeler, Devro Hebron, Devon Hebron, and Darrin McCauley, with Kidnapping in violation of 18 U.S.C. § 1201(a) (Count One); two counts of Brandishing a Firearm During and in Relation to the Commission of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii) (Counts Two and Four); Carjacking Resulting in Serious Bodily Injury, in violation of 18 U.S.C. § 2119(2) (Count Three); Aiding and Abetting Counts One through Four

---

[1]   The Probation Officer who prepared the Presentence Investigation Report interviewed Mr. Lyles, and Mr. Lyles' victim impact statement is quoted in full in the November 8, 2019, Revised Presentence Investigation Report ("Revised PSR") at ¶ 30. Mr. Lyles also addressed the Court in person at the time of defendant's original sentencing on October 8, 2009 (10/08/2009 Tr. at 9-10).

(18 U.S.C. § 2(a)); Assault With Intent to Commit Robbery While Armed, in violation of D.C.

Code §§ 22-401, -4502 (Count Five); Possession of a Firearm During the Commission of a

Crime of Violence or Dangerous Offense, in violation of D.C. Code § 22-4504(b) (Counts Six

and Eight); Assault With Intent To Kill While Armed ("AWIKWA"), in violation of D.C. Code

§§ 22-401, -4502 (Counts Seven and Nine); and Aiding and Abetting Counts Five Through Nine

(D.C. Code § 22-1805) (ECF No. 1).

All of the counts in the indictment related to an incident that occurred on September 24,

2008. The events on that date are described in more detail in the "Factual Background"

paragraphs of the Government's Memorandum in Aid of Sentencing filed on August 31, 2009

(ECF No. 94 at 2-9), and in the Statement of the Offense, signed by defendant and filed with

this Court on May 18, 2009 (ECF No. 71). We summarize them here.

Sometime in September 2008, defendant Cooper, Lassiter, Devro Hebron, Devon Hebron,

and Wheeler discussed plans to rob Mr. Lyles. After one aborted attempt on September 23, 2008,

defendant and his co-defendants met again on September 24, 2008, to effectuate their plan to

rob Mr. Lyles. The meeting took place at the townhouse of co-defendant Darrin McCauley.

During this meeting, Devro Hebron and Wheeler discussed how Wheeler would lure Mr. Lyles

to co-defendant McCauley's townhouse by telling Mr. Lyles that Wheeler needed some help to

authenticate some drugs that Wheeler would claim he wanted to buy. Devro Hebron told

Wheeler that he would give him a few thousand dollars from the robbery of Gregory Lyles.

Before Wheeler left this meeting, Devon Hebron, in defendant's presence, asked Wheeler if he

was going to help rob Mr. Lyles. Devro Hebron then entered McCauley's townhouse and asked

McCauley if he wanted to make some money by robbing a guy that Wheeler was bringing to the

townhouse. McCauley agreed to join in the robbery. During this conversation, Devro Hebron told McCauley that they were going to beat Mr. Lyles and use duct tape to control him.

Devon Hebron and defendant Cooper entered the townhouse a short time later. In the presence of Devon Hebron, defendant, and McCauley, Devro Hebron stated that he might have to kill Mr. Lyles if he did not have any money or drugs. After Wheeler left from his meeting with Devro Hebron, Lassiter called Wheeler and asked him if he was going to help rob Mr. Lyles. Wheeler agreed to do so. Lassiter told Wheeler not to do anything until he got to the townhouse. He also told Wheeler not to tell Mr. Lyles who would be at the townhouse.

Wheeler then drove to Mr. Lyles' shop and asked him to come with him to buy some cocaine. Wheeler told Mr. Lyles that he did not know how to tell if the cocaine he was going to buy was real, and that Wheeler needed Lyles' help.

While Wheeler was meeting with Mr. Lyles, Lassiter entered McCauley's townhouse. Lassiter, Devro Hebron, Devon Hebron, defendant Cooper, and McCauley then discussed where they would hide, and who would assault Mr. Lyles. Wheeler then called Lassiter and informed him that he was on his way to McCauley's townhouse with Mr. Lyles. Lassiter called Wheeler back and told him to make sure that there was nobody with Mr. Lyles when Wheeler brought him to the townhouse. Devro Hebron and Lassiter told Devon Hebron, defendant Cooper, and McCauley that Wheeler was on his way to the townhouse with Mr. Lyles.

When Mr. Lyles entered the townhouse, Lassiter told him, "You know what time it is, the only way you are going to live is if you give us some money." Several of the codefendants, including defendant Cooper, Devon Hebron, and Lassiter, then assaulted Mr. Lyles. Mr. Lyles

saw defendant Cooper with a bat and a handgun.[2] Devro Hebron and Lassiter were both observed with a gun during the assault.[3] The defendants, who repeatedly told Mr. Lyles to tell them where the money was (Devro Hebron and Lassiter threatened to kill him), took Mr. Lyles' jewelry, wallet, and car keys during the assault, which left Mr. Lyles bloodied and dazed.

After the defendants gained control of Mr. Lyles, Devro Hebron stated that they could find Mr. Lyles' home address in his truck. The codefendants attempted to handcuff Mr. Lyles, but the handcuffs broke. McCauley drove Mr. Lyles' truck to a nearby store where he purchased duct tape. McCauley gave this duct tape to defendant Cooper, who duct-taped Mr. Lyles's hands behind his back. The codefendants placed a helmet and black shirt over Mr. Lyles to hide his injuries and the blood on his clothing, led him from the townhouse, and put him in the back of his truck. Defendant Cooper, now holding a handgun, sat in the back of the truck next to Mr. Lyles. McCauley drove the truck.

Lassiter, Devro Hebron, and Wheeler entered a white van that was registered to, and driven by, Devon Hebron. Both vehicles left the area, followed by a third car driven by Lassiter's wife. Devro Hebron told Wheeler that he had Mr. Lyles' home address from a vehicle registration that was taken from Mr. Lyles' truck, and Wheeler agreed to direct them to that address.

The codefendants intended to drive to Mr. Lyles' home in order to search it for valuables including cash and drugs. However, they later abandoned that plan, at which point Lassiter and Devro Hebron stated that they needed to kill Mr. Lyles. The discussion turned to where they

---

[2]   Defendant Cooper admitted that he hit Mr. Lyles with the baseball bat, but he denied that he had a gun while inside the townhouse.

[3]   Devro Hebron and Lassiter denied having a gun inside the townhouse.

would dump his body. Devro Hebron said that he knew a field in the District of Columbia where they could kill Mr. Lyles. Devro Hebron directed Devon Hebron where to drive. Meanwhile, defendant Cooper and McCauley, still driving Mr. Lyles' truck with Mr. Lyles in the back, continued to follow Devon Hebron's van into the District of Columbia. During this drive, defendant Cooper repeatedly told Mr. Lyles that they were going to kill him he did not give them some money.[4]

After entering the District of Columbia, McCauley crashed Mr. Lyles' truck into another car, quickly exited the truck, and fled. McCauley later claimed he did this intentionally. When defendant Cooper asked McCauley where he was going, McCauley responded that he was "getting the f___ out of here." Defendant Cooper then moved into the driver's seat and continued to drive south on Wisconsin Avenue until he reached the end of Wisconsin Avenue beneath the Whitehurst Freeway. As we have previously pointed out, defendant Cooper was alone with Mr. Lyles at this time, and he could have abandoned Mr. Lyles and the truck at any time (ECF No. 94 at 7). Devon Hebron and the white van arrived a short time later.

Lassiter eventually got into the truck with defendant Cooper and Mr. Lyles; they drove through the District of Columbia until they reached a field behind a school near the 4600 block of Benning Road, SE. Lassiter directed defendant Cooper to take Mr. Lyles out of the truck. Lassiter walked Mr. Lyles into the field at gunpoint, and threatened to shoot him if he ran. After walking Mr. Lyles into the field (with defendant Cooper and Wheeler), Lassiter pointed the gun at Wheeler and attempted to shoot him in the head; he believed Wheeler was soft and would ultimately turn on the others. However, the gun jammed. Devro Hebron then took the gun and

---

[4]    As the government stated in its sentencing memorandum, defendant Cooper denied making these statements to Mr. Lyles (ECF No. 94 at 7).

tried to shoot Mr. Lyles. However, the gun failed again. Lassiter told Devro Hebron to clear the gun, but it still would not fire. Devro Hebron told Lassiter and Wheeler that they would need something else to kill Mr. Lyles, and he suggested they go to a store and buy a knife. Devro and Devon Hebron went to a nearby store and bought a box cutter. Lassiter told defendant Cooper that Devro Hebron had left to purchase a knife.

After buying the box cutter, Devro Hebron got back into the van with Devon Hebron, Lassiter, and Wheeler, and they returned to the field. Meanwhile, in the truck, Mr. Lyles made an unsuccessful attempt to attract the attention of a police officer on the side of the road. Defendant Cooper pulled the truck over and told Lassiter that Mr. Lyles had attempted to escape. Lassiter then cut Mr. Lyles with the box cutter.[5]

After Mr. Lyles had been cut on the side of the road, defendant Cooper drove him to a parking lot in the 400 block of 51st Street, SE. Defendant Cooper, Lassiter, and Devro Hebron all approached Mr. Lyles' truck in the parking lot. During this time, Mr. Lyles heard a man male say "cut that n_____'s neck 50 times. Make sure he is dead." He then heard another voice say, "He's dead already." Mr. Lyles played dead, and he does not believe that he was stabbed at this time. Devon Hebron drove Lassiter, Devro Hebron, Wheeler, and defendant to a nearby Popeye's restaurant where defendant Cooper disposed of his bloody shirt and the box cutter. Meanwhile, Mr. Lyles struggled in the back of his blood-soaked truck. He freed himself and was

---

[5]   As we wrote in our sentencing memorandum, it was unclear whether or not defendant Cooper also cut Mr. Lyles at this time. At least two codefendants described seeing defendant Cooper moving around near Mr. Lyles; however, their view was blocked by the rear passenger door of Mr. Lyles' truck. Defendant Cooper also had blood on his shirt after the stabbing, and it was defendant Cooper who disposed of the knife at Popeye's. Further, at least one of defendant Cooper's codefendants alleged that defendant Cooper admitted to stabbing Mr. Lyles. However, defendant Cooper adamantly denied that he stabbed Mr. Lyles. Mr. Lyles does not remember whether defendant Cooper or Lassiter stabbed him first. There is no physical evidence that conclusively resolves this issue.

able to push open the back door. Mr. Lyles stumbled to the door of a nearby apartment and attracted the attention of a resident who called the police.

On May 18, 2009, pursuant to a written plea agreement (ECF No. 70), defendant pled guilty to three of the nine counts in the indictment: (1) kidnapping (Count One); (2) using, carrying, possession and brandishing a firearm during and in relation to a crime of violence (§ 924(c)) (Count Two); and (3) AWIKWA (Count Nine). The government agreed to dismiss the remaining counts.

On October 1, 2009, the United States Probation Office issued a revised Presentence Report ("PSR"). Based on a total offense level of 38,[6] and a criminal history category of II, the probation officer calculated the United States Sentencing Guideline range for Count One (Kidnapping) at 262-327 months of imprisonment. The probation officer, using the District of Columbia Guidelines, calculate the range for Count Nine (AWIK) at 102-192 months of imprisonment. Finally, the probation officer calculated a consecutive sentence of 84 months on Count Two (the § 924(c) count).

On October 8, 2009, this Court sentenced defendant to 96 months of imprisonment on Count One (kidnapping), a concurrent term of 102 months of imprisonment on Count Nine (AWIKWA), and a consecutive term of 84 months of imprisonment on Count Two (§ 924(c))— an aggregate sentence of 186 months of imprisonment.[7]   The Court also imposed 60-month

---

[6]   The Base Offense Level on Count One was 32.  Four levels were added because Mr. Lyles sustained a life-threatening bodily injury. Two levels were added because a dangerous weapon was used. Because another offense (AWIK) was committed during the kidnapping, additional levels were added.   A three-level reduction for acceptance of responsibility brought the Total Offense Level to 38.

[7]   Defendant asked the Court "to consider a sentence of 168 months" of incarceration (10/08/2009 Tr. 25-26). The government, "aware . . . that the Court [was] likely to grant some or all of the defendants a variance from the applicable sentencing guideline ranges based on the factors

terms of supervised release on each count, all to run concurrently (ECF No. 123). In imposing this sentence, the Court specifically considered the nature and circumstances of the offense; defendant Cooper's history and characteristics; the appropriate punishment for these offenses; and "how best to promote respect for the law by other people in society who see what the criminal justice system does for this kind of conduct" (10/08/2009 Tr. 33-34).

On June 26, 2015, the Supreme Court held in *Johnson v. United States*, 135 S. Ct. 2551 (2015), that the residual clause of the Armed Career Criminal Act ("ACCA") (18 U.S.C. § 924(c)(2)(B)(ii)) was unconstitutionally vague. The *Johnson* decision was made retroactive to cases on collateral review, by *Welch v. United States*, 136 S. Ct. 1257 (2016). In light of these decisions, defendant filed on June 20, 2016, an abridged motion under 18 U.S.C. § 2255 challenging his § 924(c) conviction (ECF No. 181). On June 25, 2019, the Supreme Court decided *United States v. Davis*, 139 S. Ct. 2319 (2019), and held that the residual clause of 18 U.S.C. § 924(c)(3)(B) was similarly unconstitutionally vague.

On September 6, 2019, the parties filed a Joint Motion for Entry of Stipulated Disposition of Defendant's Motion Under 28 U.S.C. § 2255 (ECF No. 198), informing this Court that the parties agree after *Johnson* and *Davis* that defendant's § 924(c) conviction should be vacated

---

enumerated in 18 U.S.C. § 3553(a)" (ECF No. 94 at 16), did not make a specific recommendation at the sentencing hearing, but suggested the Court consider the relative culpability of each defendant (10/08/2009 at 27). The government also weighed the culpability of each defendant in its sentencing memorandum (*see, e.g.,* ECF No.94 at 20-21 ("[T]he government believes that if the Court grants a variance in this case, David Cooper should receive a sentence that is slightly lower or equal to the sentence for Devro Hebron, but greater than the sentences for Devon Hebron, Ryan Wheeler, and Darrin McCauley." And "With the possible exception of Gregory Lassiter, David Cooper had the most direct involvement in this offense, and his sentence should reflect that fact."). The government suggested that "the Court should impose sentences in the following order moving from the lowest to the greatest length of sentence: Darrin McCauley and Ryan Wheeler; Devon Hebron; David Cooper; Devro Hebron; and Gregory Lassiter." (*id.* at 16). The government "[did] not oppose sentence at the bottom of the applicable sentencing guideline ranges" (*id.* at 15).

because the predicate kidnapping offense does not qualify as a crime of violence under the elements clause (*i.e.*, the clause in the definition of "crime of violence" in § 924(c) that survives *Davis*). On September 10, 2019, this Court granted the parties' joint motion, and vacated defendant's § 924(c) conviction (ECF No. 203). The Court subsequently scheduled defendant's case for resentencing (Minute Order, September 26, 2019).

## <u>RECOMMENDATION</u>

The government requests this Court to resentence defendant Cooper to an aggregate term of imprisonment of 186 months: concurrent terms of 186 months on Count One, and 102 months on Count Nine. Such a sentence will be consistent with this Court's 2009 sentencing package scheme, and will be "no longer than the aggregate sentence initially imposed." *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).[8]

In *Pepper v. United States*, 562 U.S. 476 (2011), the Supreme Court explained that "a criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." *Id.* at 507 (*quoting United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996). "Because a district court's original sentencing intent may be undermined by altering one portion of the calculus, an appellate court, when reversing one part of a defendant's sentence, may vacate the entire sentence so that, on remand, the trial court can reconfigure the sentencing plan to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* (internal quotations and citations omitted).

---

[8]   The November 8, 2019, Revised Presentence Report ("Revised PSR") contains the same sentencing guidelines calculations as before (262-327 months on Count One, and 102-192 months on Count Nine). The probation officer recommended a sentence of 96 months of incarceration on Count One, and 102 months of incarceration (concurrent) on Count Nine.

In *United States v. Townsend*, 178 F.3d 558, 567 (D.C. Cir. 1999), the Court stated that "sentences on multiple counts may comprise a 'sentencing package,' so that attacking the sentence on some counts via § 2255 reopens the sentence on the other counts as well." The Court further stated that "when a defendant is found guilty on a multi-count indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan," and that if some counts are vacated, "the judge should be free to review the efficacy of what remains in light of the original plan." *Id.* Accordingly, whenever a sentencing plan is undone, "the district court should be invited to resentence the defendant on all counts in order to achieve a rational, coherent structure in light of the remaining convictions." *United States v. Bentley*, 850 F.2d 327, 328 (7th Cir. 1988); *see, e.g., United States v. Fowler,* 749 F.3d 1010, 1015 (11th Cir. 2014) ("sentencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence—the 'sentence package'—that reflects the guidelines and the relevant § 3553(a) factors.");[9] *United States v. Avila-Anguiano*, 609 F.3d 1046, 1049 (9th Cir.

---

[9]   In *Fowler*, the defendant received a life sentence for a witness-tampering conviction and a consecutive ten-year sentence for a § 924(c) conviction. 749 F.3d at 1012. After the defendant successfully appealed his witness-tampering conviction, the district court resentenced the defendant on the firearm conviction to life imprisonment. The Eleventh Circuit held that the district court had the authority to do so, and explained that where there are multiple counts of conviction and the sentencing on those multiple counts "is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence—the 'sentence package'—that reflects the guidelines and the relevant § 3553(a) factors," then the convictions are sufficiently interdependent. *Id.* at 1015. In other words,

> [*a*] criminal sentence in a multi-count case is, by its nature, a package of sanctions that the district court utilizes to effectuate its sentencing intent consistent with the Sentencing Guidelines and with the § 3553(a) factors. The thinking is that when a conviction on one or more of the component counts is vacated for good, the district court should be free to reconstruct the sentencing package (even if there is only one sentence left in the package) to ensure that the

2010) ("When a defendant is sentenced to multiple counts and one of them is later vacated on appeal, the sentence package becomes unbundled. The district court then has the authority to put together a new package reflecting its considered judgment as to the punishment the defendant deserve[d] for the crimes of which he [wa]s still convicted."); *United States v. Davis*, 112 F.3d 118, 122-123 (3d Cir.1997) (upholding resentencing on convictions not challenged by defendant's successful petition under 28 U. S. C.§ 2255 in light of interdependence of all convictions; relying in part on "sentencing package doctrine," a doctrine usually applied on direct appeal that allows resentencing on all counts when a multicount conviction produces an aggregate sentence or 'sentencing package.'").

In certain remanded cases, "trial courts have imposed a sentence on the remaining counts longer than the sentence originally imposed on those particular counts, but yielding an aggregate sentence no longer than the aggregate sentence initially imposed." *Greenlaw*, 554 U.S. at 253. "In those cases—including ones where § 924(c) convictions are invalidated," appellate courts routinely agree that "the district court may increase the sentences for any remaining counts up to the limit set by the original aggregate sentence." *Dean v. United States*, 137 S. Ct. 1170, 1176 (2017). Thus, it is appropriate in this case for the Court to resentence defendant Cooper on the two remaining convictions so as not to upset an interdependent sentencing structure.

As we have described above, the government recognized in advance of sentencing that the Court was likely to grant a downward variance from the applicable sentencing guideline ranges to all or some of the defendants based on the factors enumerated in 18 U.S.C. § 3553(a)

---

overall sentence remains consistent with the guidelines, the § 3553 factors, and the court's view concerning the proper sentence in light of all the circumstances.

*Id.*

(ECF No. 94 at 16). The government suggested that if the Court was going to grant any of the defendants a variance, it should "take into consideration the relative culpability . . . of each codefendant" (*id.*).

During defendant Cooper's sentencing hearing on October 8, 2009, the Court ranked the culpability of defendant Cooper with that of two codefendants: Devro Hebron and Devon Hebron. The Court considered defendant Cooper to be more culpable than Devon Hebron, but less than Devro Hebron (10/8/2009 Tr. 27-28). As this Court noted at the original sentencing in October 2009, defendant Cooper's actions were "horrible," and "Mr. Lyles came this close to dying" (10/08/2009 Tr. 32). Defendant Cooper was involved in the planning of the offense. In the government's view, next to Lassiter, defendant Cooper engaged in the greatest use of violence during this incident. Defendant Cooper admitted that during the assault on Mr. Lyles he participated in the beating, and he struck Mr. Lyles with a baseball bat. He tried to handcuff, and ultimately duct-taped, Mr. Lyles in order to physically restrain him. Defendant Cooper also held Mr. Lyles at gunpoint during the drive into the District of Columbia. After defendant Cooper and the other defendants arrived at the field in the 4600 block of Benning Road, defendant Cooper was present when his codefendants attempted to kill Mr. Lyles. Defendant Cooper thereafter continued to maintain control of Mr. Lyles, driving him first to the CVS store, and then back toward the field. Cooper witnessed Lassiter severely cut Mr. Lyles with a box cutter, but made no attempt to get any assistance for Mr. Lyles. As the government wrote in its sentencing memorandum, with the possible exception of Lassiter, defendant Cooper "had the most direct involvement in this offense, and his sentence should reflect that fact" (ECF No. 94 at 21).

12

The Court should also consider defendant Cooper's disciplinary history while incarcerated. According to Bureau of Prison ("BOP") records, defendant has incurred three disciplinary infractions: (1) Refusing to Obey and Order and Being Insolent to Staff Member (January 2013); (2) Tattooing or Self-Mutilation (July 2016); and (3) Possessing a Hazardous Tool (phone) (February 2018) (Revised PSR at page 5, ¶ 5c).[10]

The Court's ranking of the culpability of the defendants who are now before the Court for resentencing (Lassiter, Devro Hebron, and defendant Cooper) was reflected in the aggregate sentences it gave to each of them: 324 months for Lassiter (ECF No. 119); 216 months for Devro Hebron (ECF No. 121); and 186 months for defendant Cooper (ECF No. 123). Devon Hebron's sentence remains at 156 months (ECF No. 125).[11] Defendant Cooper's sentence should reflect that his culpability is greater than that of Devon Hebron. A sentence of 186 months is consistent with the Court's ranking of defendant Cooper's culpability, and the original bundled sentence package.

---

[10]   As a result of this most recent incident, defendant Cooper (1) was disallowed 41 days of good conduct time; (2) placed in disciplinary segregation for 15 days (suspended 90 days); (3) lost email privileges for 6 months; and  (4) lost phone privileges for 12 months.

[11]   The 156-month sentence for Devon Hebron, who did not plead guilty to a § 924(c) charge, is not affected by the *Davis* decision.

Respectfully submitted,

JESSIE K. LIU.
United States Attorney
D.C. Bar Number 472-845

MARGARET J. CHRISS
Assistant United States Attorney
Chief, Special Proceedings Division
D.C. Bar No. 452-403

_____/s/_____
JOHN P. GIDEZ
Assistant United States Attorney
Special Proceedings Division
D.C. Bar No. 332-908
Washington, DC 20530
(202) 252-6752
John.Gidez@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the foregoing to be served, via ECF and electronic

mail, on counsel of record this 2nd day of December 2019.

_/s/_____
John P. Gidez
Assistant United States Attorney